J-A03008-17

2017 PA Super 171

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| TERENCE DWIGHT FORSYTHE | |
| Appellee | No. 524 MDA 2016 |

Appeal from the Order Entered March 1, 2016
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0001235-2015

BEFORE:  LAZARUS, J., STABILE, J., and DUBOW, J.

OPINION BY LAZARUS, J.:                           **FILED JUNE 01, 2017**

The Commonwealth of Pennsylvania ("Commonwealth") appeals from the order, entered in the Court of Common Pleas of Lycoming County, granting Terence Dwight Forsythe's motion to suppress.[1]  After careful review, we reverse.

The Trial Court summarized the facts as follows:

**I. Background**

**A. Detective Al Diaz's Testimony**

_____

[1] **See** Pa.R.A.P. 311(d) (Commonwealth may appeal as of right from order that does not end entire case where Commonwealth certifies in notice of appeal that order will terminate or substantially handicap prosecution). Here, the Commonwealth included in its amended notice of appeal a certification that the order granting Forsythe's motion to suppress, "substantially handicaps and terminates the prosecution's case." Commonwealth's Amended Notice of Appeal, 4/1/16.

Detective Al Diaz (Diaz) was a Lycoming County detective for seven years. He was the coordinator of the Lycoming County Narcotics Enforcement Unit (NEU). The NEU's function is to arrest people for drug violations in Lycoming County. There are full-time and part-time members of the unit. Part-time members help when the NEU requests. Municipal police officers are part-time members of the NEU. Each police officer submits an application to the NEU. Each application is signed by the chief of police in the officer's jurisdiction. Municipal police officers are paid by their municipalities for their work in the NEU. The municipalities are reimbursed by the District Attorney's Office, who receives money from the Pennsylvania Attorney General's Office.

The NEU conducts interdiction roving patrols. An interdiction roving patrol is when law enforcement officers patrol areas where there is drug activity and attempt to stem the flow of drugs. "All those assigned [to a patrol] drive around looking for narcotics activity." If a police officer wants to stop a vehicle while on patrol, he or she has the authority to stop the vehicle. Diaz tells the patrolling officers to do their jobs. The NEU conducts interdiction patrols because there is "a really terrible drug problem in the county."

On June 3, 2015, the NEU conducted an interdiction roving patrol. In order to conduct the patrol, Diaz requested the aid of law enforcement officers in other departments. Sergeant Chris Kriner (Kriner) of the Old Lycoming Township Police Department was among those requested to aid in the patrol, which was set up by Detective Michael Simpler of the Lycoming County District Attorney's Office. The patrol included individuals from the Federal Bureau of Investigation, the Pennsylvania State Police, the Williamsport Bureau of Police, the Old Lycoming Township Police Department, the Pennsylvania Board of Probation and Parole, and the Lycoming County Probation Office. The officers were briefed before participating in the roving patrol. They were instructed to target certain areas. During briefings, Diaz sometimes gives the officers specific individuals to target, but he did not mention the Defendant or Cody Yearick (Yearick) during the June 3, 2015 briefing. After the June 3 briefing, "everyone went out to conduct investigations."

**B. Sergeant Chris Kriner's Testimony**

Sergeant Kriner has been a police officer with the Old Lycoming Township Police Department for 15 years. He has been a member of the NEU since 2001, and he has about 15 years of experience in conducting drug investigations. He assists members of the NEU in conducting drug investigations.

The NEU requested Kriner's assistance with a roving drug interdiction patrol that it was planning for on June 3, 2015. He was assigned to the patrol "through the Old Lycoming Township Police Department." He was "made aware" of the date and time of the patrol and the location of the briefing. The briefing was held on June 3, 2015 at approximately 3:00 p.m. in the conference room of the Old Lycoming Township Police Department, and the briefing lasted 30 to 45 minutes. Kriner was not given any specific information about the Defendant or Yearick during the briefing.

Kriner "went out" immediately after the briefing. He was in full uniform in an unmarked police vehicle with Chief William Solomon (Solomon) of the Old Lycoming Township Police Deparment. As part of the interdiction, Kriner is given general police powers throughout Lycoming County. He was patrolling the Interstate 180 corridor, and he was looking for indications of drug use, buying, and dealing. Kriner's duties took him outside of his jurisdiction.

Shortly before 8:00 p.m. on June 3, 2015, Kriner was patrolling the area of the Weis Market on West Third Street in Williamsport. This area is not in the Old Lycoming Township Police Department's jurisdiction. Rather, it is in the jurisdiction of the Williamsport Bureau of Police. Based on the police reports and interviews with criminal defendants, Kriner believes the area is a high-crime area. He has received complaints of drug use and drug trafficking in the area. He has also made arrests for drug trafficking in the area.

As Kriner was driving through the Weis Market's parking lot, he saw a green Chevy Blazer parked in the lot. Two men quickly exited the vehicle and went into the store. Kriner checked for information on the vehicle and learned that it was registered to an individual with an address in Mifflinburg, Union County. From his training and experience, Kriner knows that a lot of drug users go to Williamsport to purchase drugs. While the men were in the store, Kriner observed that the vehicle's windows were down, its keys were in the ignition, and cell

phones were inside the vehicle. The men exited the store several minutes after they entered. They were looking around, and Kriner believed that they were looking for him and Solomon.

One man sat in the Blazer's driver seat; the other man sat in the passenger seat. When the vehicle exited the parking lot, Kriner began to follow it. Kriner thought it was "probable that [the men] may have been involved in drug activity." At the intersection of Market Street and West Third Street in Williamsport, it was apparent that the Blazer's license plate light was out. Kriner does not remember if the police car's headlights were on.

The Blazer did not enter Route 15 South towards Union County. Instead, it proceeded east on Interstate 180. Kriner followed the vehicle into Loyalsock Township, which is not in Old Lycoming Township Police Department's jurisdiction. Kriner stopped the vehicle because the registration plate light was not operating. After the vehicle stopped, Kriner saw the passenger move around and twist his body. Kriner talked with the vehicle's passenger, who was the Defendant. Solomon talked with the driver, who was Yearick. After talking with the Defendant, Kriner talked with Yearick. Based on the interviews of the Defendant and Yearick, the Defendant was taken into custody. There were drugs "on the Defendant" and "drugs on Yearick." Cell phones were seized from the vehicle.

Trial Court Opinion, 2/29/16, at 1-4.

Forsythe filed a motion to suppress, claiming that the stop of the vehicle was illegal because Sergeant Kriner lacked probable cause and that the stop violated the Municipal Police Jurisdiction Act (MPJA).[2] Following the

---

[2] 42 Pa.C.S.§ 8953.

- 4 -

hearing, the court granted, in part, Forsythe's motion to suppress.[3] The Commonwealth appealed and presents the following issues for our review:

1. Whether the trial court abused its discretion in finding a violation of the Municipal Police Jurisdiction Act?

2. Whether the trial court abused its discretion in suppressing evidence based on the alleged violation of the Municipal Police Jurisdiction Act?

3. Whether the trial court abused its discretion in suppressing the observations of police officers?

Commonwealth's Brief, at 9.

Our well-settled standard of review of the granting of a motion to suppress evidence is as follows:

When the Commonwealth appeals an order suppressing evidence, we may consider on review only the evidence from the defendant's witnesses along with the Commonwealth's evidence that remains uncontroverted. Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

***Commonwealth v. Guzman***, 44 A.3d 688, 691-92 (Pa. Super. 2012)

(citing ***Commonwealth v. Brown***, 996 A.2d 473, 476 (Pa. 2010)).

Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression

_____

[3] The trial court ruled that the controlled substances, Forsythe's statements, the evidence obtained from the Blazer, and the officers' observations made on June 3, 2015 were suppressed, but ruled that the driver's proposed testimony could be submitted into evidence. Suppression Order, 3/1/16, at 9.

court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (internal citations and quotation marks omitted).

At the suppression hearing in the instant case, the only evidence the Commonwealth presented was the testimony of Detective Diaz and Sergeant Kriner, which was uncontested and uncontradicted. Since no relevant facts are in dispute, the question presented is purely one of law. Accordingly, our standard of review is *de novo*. *Commonwealth v. Beaman*, 880 A.2d 578, 581 (Pa. 2005); *Guzman*, *supra*.

The Commonwealth first asserts that the trial court erred in finding a violation of the MPJA:

Pursuant to Section 8953(a) of the MPJA:

(a) General rule. -- Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

…

(3) Where the officer has been requested to aid or assist any local, State or Federal law enforcement officer or park police officer or otherwise has probable cause to believe that the other officer is in need of aid or assistance.

(4) Where the officer has obtained the prior consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which provides primary police services to a political subdivision which is

beyond that officer's primary jurisdiction to enter the other jurisdiction for the purpose of conducting official duties which arise from official matters within his primary jurisdiction.

42 Pa.C.S. § 8953(a)(3), (4). The MPJA is not among those statutes which must be strictly construed and, instead, is subject to liberal construction to effectuate its objects and to promote justice. **Commonwealth v. Peters**, 915 A.3d 1213 (Pa. Super. 2007).

> A careful reading of the [MPJA] reveals that its purpose is to provide police officers with authority to make arrests outside of their primary jurisdictions in limited situations. In providing for such authority, the statute also insures that police departments will be kept apprised, to the greatest possible extent, of action taken in the municipality by police from outside the jurisdiction. Therefore, it is clear that one of the goals of the legislature in enacting the statute was to promote a cohesive working relationship among municipal police departments.

**Commonwealth v. Ebersole**, 492 A.2d 436, 438-39 (Pa. Super. 1985). **See Commonwealth v. Sestina**, 546 A.2d 109 (Pa. Super. 1988) (the MPJA "not only encourages cooperative relationships among municipalities, but also between local municipalities and the state police;" the MPJA addresses administrative, intra-departmental practice for state police).

Instantly, the trial court explicitly stated the following findings of fact:

1. The trial court finds that Sergeant Kriner was working at the behest of Detective Diaz of Lycoming County Narcotics Enforcement Unit (NEU).

2. A "Municipal Drug Task Force Agreement" exists between the Pennsylvania Attorney General and Lycoming County District Attorney, dated January 15, 2014.

Trial Court Opinion, 3/31/16. Furthermore, the trial court noted that:

had Sergeant Kriner made a vehicle stop for a vehicle license plate light not operating, in his own policing jurisdiction, the stop would have been legal. Conversely, if Old Lycoming Township had a properly executed municipal drug task force agreement adopted by ordinance its officer could have legally made the stop relying on the excellent policing skills outlined in the Court's Order of March 1, 2016.

Trial Court Opinion, 6/14/16, at 2. Finally, the trial court correctly points out that "the question of a police officer's ability to act outside his jurisdiction is governed by the MPJA not the Local Government Code," the latter of which contains the Intergovernmental Cooperation Act.[4] Trial Court Opinion, 3/31/16, at 4.

Based on the foregoing, it appears that the trial court found a violation of the MPJA solely based on the fact that the Municipal Drug Task Force

---

[4] Pursuant to the Intergovernmental Cooperation Act ("ICA"):

(a) General rule. – Two or more local governments in this Commonwealth may jointly cooperate, or any local government may jointly cooperate with any similar entities located in any other state, in the exercise or in the performance of their respective governmental functions, powers or responsibilities.

(b) Joint agreements. – For the purpose of carrying the provisions of this subchapter into effect, the local governments or other entities so cooperating shall enter into any joint agreements as may be deemed appropriate for those purposes.

53 Pa.C.S. § 2303. Under section 2305 of the ICA, a local government may enter into any intergovernmental cooperation with another local government upon the passage of an ordinance of its governing body. *Id.* at § 2305.

Agreement[5] was not officially ratified by ordinance in Lycoming County.  We disagree with the trial court's reasoning.

Here, a drug task force agreement existed between the Pennsylvania Attorney General and the Lycoming County District Attorney.  The agreement made explicit that the Pennsylvania Attorney General "requests the aid and assistance of the municipal police departments to implement the municipal drug task force activities in compliance with the [MPJA]" and that the District Attorney of Lycoming County would be in charge of coordinating that effort.  Municipal Drug Task Force Agreement, 1/15/14, at 2-3. Sergeant Kriner acted in compliance with specific orders from Detective Simpler of the Lycoming County District Attorney's Office and Detective Diaz,

_____

[5] **This agreement**, made this 15th day of January, 2014, by and among the Commonwealth of Pennsylvania, Office of the Attorney General (hereinafter referred to as OAG), Bureau of Narcotics Investigation and Drug Control (hereinafter referred to as BNIDC), and the Lycoming County Office of the District Attorney, individually and collectively, (hereinafter Municipalities) []

**Witnesseth that**:

**Whereas**, the Attorney General has established a municipal drug task force program throughout Pennsylvania to coordinate narcotics investigation, enforcement and prosecution activities, and

**Whereas**, the Attorney General has requested the District Attorney of Lycoming Country to control and supervise this municipal drug task force for her [ . . . ]

Commonwealth of Pennsylvania Office of Attorney General, Municipal Drug Task Force Agreement, 1/15/14, at 1.

the coordinator of the Lycoming County NEU. On June 3, 2015, as a member of the NEU and importantly, acting within that duty, Sergeant Kriner was given general police power within the entirety of Lycoming County, Detective Diaz's jurisdiction.

Sergeant Kriner first witnessed the vehicle in question in Williamsport, which is within Lycoming County. Based on his training and experience, Sergeant Kriner immediately recognized suspicious activity which led him to believe that it was "probable that [the men] may have been involved in drug activity." N.T. Suppression Hearing, 2/9/16, at 24. Sergeant Kriner then followed the vehicle into Loyalsock Township, which is also within Lycoming County. There, he pulled over the vehicle because the license plate light was not operating. As the trial court made clear, this stop was legal so long as the officer has police jurisdiction in that township. Because we find that Sergeant Kriner was acting in compliance with the MPJA as a function of the Municipal Drug Task Force Agreement, the vehicle stop was legal.

As mentioned previously, "the MPJA must be construed liberally to achieve one of its purposes, which is to provide police with the authority to act outside their jurisdictions under the circumstances enumerated in that Act." *Commonwealth v. Chernosky*, 874 A.2d 123, 130 (Pa. Super. 2005) (citing *Commonwealth v. Lehman*, 870 A.2d 818 (2005)). We have found no case law that requires that an agreement under the MPJA be ratified by a county ordinance in the way required of an agreement pursuant to the ICA. Rather, this is exactly the type of police activity contemplated

- 10 -

under the MPJA – a county law enforcement agent properly requested the aid of its individual police municipalities in a countywide police effort. Based upon the required liberal reading of the MPJA and the existence of the Municipal Drug Task Force Agreement, as well as the specific request for assistance made by Detective Diaz, we find that Sergeant Kriner's actions did not violate the MPJA. Therefore, suppression was unwarranted.

Because we find that Sergeant Kriner's actions did not violate the MPJA, and that suppression was unwarranted, we need not reach the Commonwealth's remaining issues.

Order reversed. Case remanded for further proceedings consistent with the dictates of this Opinion. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/1/2017