J-S51023-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| SEYMOOR AGUSTUS DOYLE, | |
| Appellee | No. 1616 EDA 2015 |

Appeal from the Order Entered May 1, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0003506-2014

BEFORE:  BOWES and SHOGAN, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.:  **FILED FEBRUARY 13, 2018**

The Commonwealth appeals from the trial court's May 1, 2015 order granting in part and denying in part Seymoor Agustus Doyle's ("Appellee") Omnibus Pre-Trial Motion.  Specifically, the Commonwealth contends that the trial court erred in suppressing statements made by Appellee to Officer Jeffrey Shull ("Officer Shull") and Agent Alan Basewitz ("Agent Basewitz") before Appellee was ***Mirandized***.[1, 2]  We affirm in part, reverse in part and remand.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

[2] The May 1, 2015 order denied suppression of statements made by the Appellee to Agent Basewitz.  However, the trial court's opinion later clarified
*(Footnote Continued Next Page)*

The trial court set forth the following factual recitation:

This case involves the alleged March 6, 2014 trafficking of marijuana through a private parcel carrier. Employees of United Parcel Service (UPS) examined a package which revealed contents suspicious for marijuana. Agents of the Pennsylvania Attorney General's Office were called to investigate the package. The investigation revealed the package contained 25 lbs. of suspected marijuana. A controlled delivery was conducted by agents of the Pennsylvania Attorney General's Office, DEA and Springfield Township Police Department resulting in the arrest of [Appellee] who claimed the package.

[Appellee] stands charged on six (6) criminal counts including: (1) violation of [35 P.S. §780-113 (a)(30)] manufacture, delivery, or possession with intent to deliver marijuana an ungraded felony; (2) violation of [35 P.S. § 780-113 (a)(16)] intent to possess controlled substance by person not registered to lawfully possess (marijuana) an ungraded misdemeanor; (3) violation of [18 Pa.C.S. § 7512 (a)] criminal use of communication facility, a third degree felony; (4) violation of [18 Pa.C.S. § 903 (c)] criminal conspiracy criminal use communication facility, a felony of the third degree; (5) violation of [18 Pa.C.S. §903 (c)] criminal conspiracy to possession of marijuana, an ungraded misdemeanor; (6) violation of [18 Pa.C.S § 903 (c)] criminal conspiracy to deliver[] marijuana, an ungraded felony.

On February 19, 2015 the [trial court] conducted proceedings in connection with [Appellee's] omnibus pretrial motion which included a suppression motion and at that time testimony was received by the Commonwealth's witnesses Agent Timothy King, Agent Alan Basewitz and Officer Jeffrey Shull. An Order was entered on [May 1], 2015 suppressing certain *un-Mirandized* statements and in part denying suppression of certain *Mirandized* statements. It is from the [May 1], 2015 Order of Court from which [the Commonwealth] appeals.

*(Footnote Continued)* ————————————

that the court was suppressing only the pre-***Miranda*** statements to Agent Basewitz and denying suppression of the post-***Miranda*** statements. Trial Court Opinion, 12/20/16, at 1.

* * *

On March 6, 2014 Agent King was working in his capacity as a narcotics agent for the Pennsylvania Attorney General's office when he and his partner received a request from UPS management to investigate a suspicious parcel that they had at their Philadelphia airport facility.

* * *

Agent King testified that he appeared at the facility and was presented with a UPS package which was already opened. He observed a large plastic shrink-wrap ball which he's seen on many prior occasions and he suspected it to be marijuana. Agent King estimated the dimensions of the package to be approximately 12" x 16".

[Agent King further testified that t]he box's label indicated that it was shipped from Custom Fabric in Burlington[,] North Carolina but that his investigation revealed it had actually been shipped from E and G Mailboxes in Los Angeles, California. Agent King testified that E and G [M]ailboxes [is] a private shipping and receiving agency.

Agent King testified that the box was addressed to Outstanding Designs at 491 Baltimore Pike in Springfield, that 491 Baltimore Pike is a MailSource[] shipping and receiving agency. He explained that his contact with MailSource revealed that Outstanding Designs Company had an account with the MailSource.

Agent King testified that he returned the package to his headquarters and conducted a field test on the contents which revealed a 25 pound ball of compressed marijuana. He resealed the package and along with other agents and task force agents went to 491 Baltimore Pike with the package. He placed the package in a pile in the middle rear of the store where incoming packages were generally piled up. Agent King then set up surveillance inside the store.

At 11:30 AM Agent King observed [Appellee] walk into the MailSource and walk directly to the pile of packages and pick up

the marijuana package without even reading the label and walked out the door with it.

Agent King testified he observed [Appellee] walk to a gold Nissan Maxima in the parking lot and place the package on the rear seat area and a get into the car and drive it out of the parking lot all the while the other backup officers were following. Agent King explained that he was in radio communication with the officers outside and they also observed [Appellee] enter and exit with the package and place it in his vehicle.

* * *

[Agent Basewitz took the stand next and testified that after Appellee put the package in his car and drove out of the parking lot], a Springfield Township unmarked police car operated by Officer Jeffrey Schull followed [Appellee's] vehicle and activated its emergency lights and [Appellee] pulled into a parking lot adjacent to a Home Depot. Officer Jeffrey Schull then spoke with [Appellee] ostensibly for a routine traffic stop and eventually removed him from the vehicle and had him standing at the rear trunk area of the car when Agent Basewitz approached with another Officer Thomas Hawn of the Philadelphia Police Department. [Appellee] contended he had just come from the Hibachi restaurant. Agent Basewitz confronted [Appellee] about coming from the MailSource and [Appellee] relented and acknowledged coming from the MailSource.

* * *

Agent Basewitz testified that after [Appellee] voluntarily acquiesced in the search of the trunk of his car, the agents asked him where he was coming from and what he was doing with the package. [Appellee] answered that he was going to Bosco Moving and Storage at 53rd and Baltimore in Philadelphia and was intending to re-ship the package. Further Agent Basewitz testified [Appellee] said he was picking the package up for somebody he knows as "Peter". [He also testified that], [Appellee] stated that he knew "Peter" through a woman he has known for several years. [Appellee] was to be paid one hundred dollars to retrieve (and re-ship) the package. [Basewitz testified that Appellee told him] that this "Peter" was going to call him when he arrived at Bosco and tell him the name and address of the person to re-ship the package. [Appellee] refused to permit

the agents to search his car. At this point [Appellee] was *Mirandized* and a consensual conversation purportedly ensued.

The Agent testified that [Appellee] was not handcuffed until Agent Hawn read him *Miranda* warnings and then engaged [in] further conversation. Agent Basewitz described [Appellee] as very animated when standing by the trunk of his car; that he was walking and pacing and walking back and forth and was agitated and that he appeared angry and defensive. [Appellee] was cautioned to stay close to his car. Essentially, the Agents and Officers were attempting to gain [Appellee's] cooperation in the investigation.

At the scene, [Appellee] repeatedly refused to permit the search of the parcel package containing the illegal marijuana. In response to a question of whether drug dogs would react to a sniff of his car, [Appellee] said he loaned his car earlier that day to people who brought it to a repair shop in west Philly and that they had smoked "weed" in the car.

Apparently as the conversation continued [Appellee] began to contradict himself regarding the story surrounding loaning his vehicle to two people who smoked "weed" in it. [Appellee] could not identify the repair shop where the vehicle was purportedly taken.

With respect to the contents of the box [Appellee] said he doesn't care what's in it is (sic) not any of his business and he doesn't care if it is guns, marijuana, cocaine or pornography.

Agent Basewitz was asked if he purposely engaged in conversation to elicit information prior to [Appellee] being *Mirandized*. The agent responded that they engaged in a pretextual stop and conversation but that there wasn't much substance to that. That a conversation was attempted to determine where he was going and get some cooperation or consent. [Appellee] resisted that attempt.

On cross-examination the agent admitted that he did confront [Appellee] with the fact that he saw him come from the MailSource not Hibachi.

Agent Basewitz testified that Officer Schull, himself and Officer Hawn were all present at the back of the car. Although

there were a dozen officers at the scene most were unknown (undercover of some kind) to [Appellee]. Agent Basewitz testified that the *post–Miranda* conversations with the [Appellee] were essentially the same as the *pre–Miranda* conversations.

The agent admitted there were some conversations that occurred *pre-Miranda* that elicited different information than *post-Miranda* conversations. The *post-Miranda* conversation concerned the people who smoked weed in his car, the drug sniff dog and forgetting the name of the repair shop and its owner.

On redirect the agent testified that [Appellee] also possessed $2,049.00 in cash in his pocket. [Appellee] blurted that it was tuition money for his son. Agent Basewitz's testimony concluded.

Officer Jeffrey Shull was next called to testify.

* * *

Officer Shull testified that after he pulled [Appellee's] car over, he spoke to [Appellee] through the passenger side window requesting his vehicle information, license, insurance and registration. Officer Shull treated it as a regular vehicle stop. Ultimately [Appellee] provided everything the officer asked for. The officer engaged [Appellee] in a conversation on where he was coming from and initially [Appellee] responded that he was coming from Hibachi, a Chinese restaurant. Officer Shull asked him if he had anything illegal in the car and [Appellee] stated "no you can check the trunk" At that point DEA agents arrived on the scene. Officer Shull had no further involvement at that point.

Trial Court Opinion, 12/20/16, at 2-12 (citations omitted).

The Commonwealth presents a single issue for our review:

Whether the trial court erred as a matter of law in granting the [Appellee's] motion to suppress all the pre-<u>Miranda</u> statements made by [Appellee] during a lawful, non-custodial investigative detention?

Commonwealth's Brief at 1.

Specifically, the Commonwealth argues the trial court erred when it suppressed Appellee's pre-***Miranda*** statements made to Officer Shull that he was leaving an Hibachi restaurant, and the answers Appellee gave to Agent Basewitz's questions regarding the package Appellee had retrieved and his whereabouts prior to being stopped. The Commonwealth asserts that the above statements were made during what was effectively a brief traffic stop, before the stop turned custodial, that did not require Appellee be ***Mirandized***. Commonwealth's Brief at 16–17.

> Our standard of review is well established:
>
> When the Commonwealth appeals an order suppressing evidence, we may consider on review only the evidence from the defendant's witnesses along with the Commonwealth's evidence that remains uncontroverted. Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.
>
> Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

***Commonwealth v. Forsythe***, 164 A.3d 1283, 1286 (Pa. Super. 2017) (citations omitted).

Under Pennsylvania law, there are three types of encounters between citizens and police officers. ***Commonwealth v. Acosta***, 815 A.2d 1078,

1082 (Pa. Super. 2003) (*en banc*). The first is a mere encounter, which requires no level of suspicion on the part of the officer and carries no compulsion for the citizen to respond. ***Id***. The second is an investigative detention, which requires a showing of reasonable suspicion. ***Id***. This second type of stop includes "a period of detention, but does not involve such coercive conditions as so constitute the functional equivalent of an arrest." ***Id***. Finally, the third category, arrest or custodial detention, must be supported by probable cause. ***Id***. A statement made under custodial interrogation is presumptively involuntary unless the individual in custody is advised of his ***Miranda*** rights. ***Commonwealth v. Levanduski***, 907 A.2d 3, 23 (Pa. Super. 2006).

"The overlying test to determine whether a person is being subjected to a custodial interrogation necessitating ***Miranda*** warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes his action or movement is restricted by such interrogation." ***Commonwealth v. Turner***, 772 A.2d 970, 973 (Pa. Super. 2001). ***See also Commonwealth v. Luster***, 71 A.3d 1029, 1051 (Pa. Super. 2013) ("Custodial interrogation has been defined as questioning initiated by the police after a person has been taken into custody or otherwise deprived of his or her freedom in any significant way").

Indeed, in order to determine if an individual has been detained, our Supreme Court set forth a non-exclusive list of factors to consider, including:

the presence of police excesses, physical contact by the police or an attempt to restrain an individual's movement, the demeanor of the police officer, the location of the confrontation, the police officer's manner towards the individual, and the content of the questions asked by the officer. *Commonwealth v. Strickler*, 757 A.2d 884, 897–898 (Pa. 2000). A court should look at the totality of the circumstances when determining whether an individual has been subject to custodial interrogation. *Commonwealth v. Clinton*, 905 A.2d 1026, 1032 (Pa. Super. 2006).

Turning first to the statements made to Officer Shull, the trial court found those statements were made while Appellee was subject to a custodial interrogation. Trial Court Opinion, 12/20/16, at 20. We disagree, and after reviewing the totality of Appellee's interaction with Agent Shull, we find that the trial court erred when it suppressed the statements made to Officer Shull because their interaction did not reach the threshold of custodial interrogation.

In the instant case, Officer Shull was alone when he stopped Appellee and requested Appellee's license, registration, and insurance. N.T., 2/19/15, at 59. Officer Shull asked Appellee where he was coming from and if he had anything illegal in the car. *Id*. at 60. Appellee replied that he did not have anything illegal in the car and informed Officer Shull that he could search the trunk. *Id*. At that point, Officer Shull asked Appellee to step out of the car and the DEA agents arrived. *Id*. The entirety of Appellee's exchange with

Officer Shull took a "couple minutes." *Id*. Officer Shull had no further contact with Appellee once the DEA agents arrived. *Id*. at 61.

Reviewing the relevant factors set forth in *Strickler*, 757 A.2d at 898–899, we find Appellee was not subject to custodial detention. Here, Officer Shull was a single police officer; thus there was no excessive police presence. Further, Officer Shull was not confrontational with Appellee. Instead, he asked routine questions and neither challenged Appellee on any of his responses nor attempted to restrain Appellee's movement, beyond asking Appellee to exit the vehicle. To the extent the trial court found that Appellee's interaction's with Officer Shull constituted a custodial interrogation, the trial court erred. The Appellee's statements to Officer Shull should not have been suppressed because they occurred during an investigatory detention, not a custodial detention. *See Commonwealth v. Clinton*, 905 A.2d 1026 (Pa. Super. 2006) (finding investigatory detention, not custodial interrogation, where police officer pulled appellee over after appellee ran a stop sign, asked appellee if he had any weapons or anything "the police should be aware of" and appellee responded that he "had a little bit of weed").

The same cannot be said for Appellee's interaction with Agent Basewitz. Again, looking at the totality of the circumstances, Appellee was subject to a custodial interrogation once Agent Basewitz and another officer

- 10 -

arrived at the scene and began questioning him. As the trial court set forth in its opinion:

> [Appellee and Officer Shull] were joined by Officer Hawn and Agent Basewitz at the back of the car. Surrounded by three (3) law enforcement officers with additional officers immediately nearby as well as even more officers along a perimeter indicates a compelling police presence. Neither handcuffs nor weapons were immediately deployed, however [Appellee] was instructed to stay in place by officers when he began to pace and wander at the back of the car during questioning.
>
> The manner of questioning proceeded with [Appellee] being confronted with questions about where he was coming from, headed to and then confronted by officers with his inconsistencies and a demand for explanation. [Appellee's] responses quickly broke down. Law enforcement asked for permission to search his vehicle to which [Appellee] responded they could search the trunk of the vehicle. He said he did not give permission for the officers to search the package. Ultimately, the officers handcuffed and *Mirandized* [Appellee] who continued to voluntarily answer essentially the same line of questioning.
>
> Under the totality of the circumstances the statements made by [Appellee] prior to being *Mirandized* are properly suppressed. The questions were expressly for the purpose of benefiting the ongoing investigation and therefore would foreseeably elicit incriminating admissions from [Appellee]. [Appellee's] liberty was significantly restricted. The suppression hearing testimony was clear that agents were going to detain, question and likely charge whoever showed up to pick up the package containing marijuana. [Appellee] received specific orders to step and stay close to the rear bumper of his vehicle without wandering. The fact that neither handguns nor handcuffs were initially deployed is not in and of itself dispositive of the coerciveness of the interrogation. Rather, the officers quickly employed handcuffs and *Mirandized* [Appellee] and re-initiated virtually the same line of questioning eliciting even further incriminating statements once the officers felt [Appellee] was neither cooperative nor responsive.

Also, the officer's conversational tone in and of itself also did not obviate the necessities of *Miranda*. Essentially, the identical line of questioning was reengaged and the [Appellee] voluntarily responded once *Mirandized*. The likelihood of eliciting incriminating answers from the [Appellee] was reasonably foreseeable because the officers were well aware of the contraband in the vehicle.

Trial Court Opinion, 12/20/16, at 18–19.

We agree with the trial court's assessment as it applies to Appellee's interaction with Agent Basewitz and adopt it as our own. Appellee was under custodial interrogation when Agent Basewitz began questioning Appellee; thus, the trial court did not err when it suppressed Appellee's statements to Agent Basewitz prior to Appellee receiving his ***Miranda*** warning.

Order affirmed in part and reversed in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/13/18