J-S73020-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| TYLER LAVAR COTTINGHAM, | |
| Appellee | No. 521 WDA 2018 |

Appeal from the Order Entered April 2, 2018
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0001312-2017

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and OLSON, J.

MEMORANDUM BY BENDER, P.J.E.:              FILED FEBRUARY 1, 2019

The Commonwealth appeals from the order entered by the Court of Common Pleas of Cambria County granting the motion to suppress evidence filed by Appellee, Tyler Lavar Cottingham. After careful review, we affirm in part and reverse in part.

The affidavit of probable cause filed in this matter read as follows:

On 8 July 2017, units were [called] out to a shooting at Swallow Pl behind the Wood St playground. The caller, Derek Rose, was also the shooter. Rose remained on scene and cooperated with [o]fficers. Rose was in the process of backing his vehicle into his garage. Rose opened the garage door and was returning to his vehicle [when] a maroon Nissan bearing PA [license plate number] JWP0304, came down the alley at a high rate of speed. The passenger, Leslie Jones, remained in the vehicle. The driver, [Appellee], got out of the Nissan ran up to Rose[,] began yelling at him[, and] then punched Rose in the head. [When] Rose asked [Appellee] what this [was] about, [Appellee] punched Rose again. [Appellee] said, "[Y]ou know what this is about! If you want to take this to the next level, I

have something under the seat for you!" [Appellee] punched Rose again in the head. At [that] point, Rose took a small Ruger .380 handgun from his pocket. [When Appellee] turned to run, Rose fired multiple shots[,] hitting [Appellee] 4 times in the back. [Appellee] continued running[,] lo[]sing his sandals along the way. Rose immediately called 911, and told Jones[,] "Don't be scared, I'm not gonna hurt you." Rose placed the firearm on the back of his trunk and waited for police to arrive. Jones got out of the vehicle and ran after [Appellee,] picking up the Nissan key along the way. Rose and Jones cooperated with police and provided ... statement[s].

On 10 July 2017, this detective and Detective Adams responded to Conemaugh Hospital to check the status of [Appellee]. [Appellee] was still on a breathing tube and was unable to speak to police. This Detective spoke to [Appellee]'s mother Jeanene Callaway, who is also the owner of the Nissan.... Callaway did sign a consent to search form for the Nissan [Appellee] was driving and in control of on the day of the incident.

This [d]etective and Detective Adams went to Brat Towing and conducted a search of the Nissan. Between the driver[']s seat and center console, in plain view, was a flashlight stun gun (similar to a cattle prod). Inside the middle console was found a mason jar, the inside of which was covered in marijuana residue. Detective Adams found a green Crown Royale Bag under the driver[']s seat. Inside the bag was another mason jar, containing a large amount of marijuana and a digital scale. One cell phone was found in the center console. All items were photographed and collected as evidence.

Affidavit of Probable Cause, 7/11/17, at 1.

On September 19, 2017, the Commonwealth charged Appellee, by criminal information, with possession with intent to deliver marijuana (PWID), 35 P.S. § 780-113(a)(30); possession of drug paraphernalia (PDP), 35 P.S. § 780-113(a)(32); prohibited offensive weapons, 18 Pa.C.S. § 908; and simple assault, 18 Pa.C.S. § 2701(a)(1). On March 1, 2018, Appellant filed an omnibus pretrial motion presenting 1) a motion to suppress the seized

physical evidence; and 2) a motion to quash the criminal information based on the assertion that the Commonwealth failed to present a prima facie case that Appellee possessed the seized contraband. On March 15, 2018, the court conducted a suppression hearing. On April 2, 2018, the lower court filed an opinion and order granting the motion to suppress with respect to the seized marijuana and paraphernalia, but denying the motion with respect to the weapon.

On April 16, 2018, the Commonwealth filed an interlocutory appeal pursuant to Pa.R.A.P. 311(d) ("In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.").[1] On May 4, 2018, the Commonwealth filed a timely, court-ordered Pa.R.A.P. 1925(b) statement. The suppression court issued its Rule 1925(a) opinion on May 14, 2018, in which the court relied substantially on its April 2, 2018 opinion that accompanied the order under review.

The Commonwealth now presents the following questions for our review:

> 1. Whether the suppression court erred by suppressing evidence that was seized pursuant to the consent of the owner of the vehicle that was subject to a search after the consent was given to Detective Adams[?]

_____

[1] In its notice of appeal, the Commonwealth so certified.

2. Whether, in the alternative, if it was the suppression court's intention to dismiss certain counts or quash certain counts based on a lack of prima facie evidence, ... whether the suppression court erred by doing so[?]

Commonwealth's Brief at 7.

Our well-settled standard of review of the granting of a motion to suppress evidence is as follows:

When the Commonwealth appeals an order suppressing evidence, we may consider on review only the evidence from the defendant's witnesses along with the Commonwealth's evidence that remains uncontroverted. Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain de novo review over the suppression court's legal conclusions.

Commonwealth v. Guzman, 44 A.3d 688, 691–92 (Pa. Super. 2012) (citing Commonwealth v. Brown, ... 996 A.2d 473, 476 ([Pa.] 2010)).

Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

Commonwealth v. Jones, ... 988 A.2d 649, 654 ([Pa.] 2010) (internal citations and quotation marks omitted).

Commonwealth v. Forsythe, 164 A.3d 1283, 1286–87 (Pa. Super. 2017).

We begin with a summary of the suppression court's reasons for granting suppression. First, the court determined that "the Johnstown Police Department conducted a lawful, warrantless search of the vehicle because the Johnstown Police Department sought and obtained the consent of the owner

of the vehicle before effectuating the search." Suppression Court Opinion (SCO), 4/2/18, at 3 (unnumbered pages). Second, the court found that Appellee "was aware of the presence of the weapon in the vehicle and, therefore, the evidence of the weapon cannot be suppressed." Id. at 4. Third, the court found that there was "no evidence that [Appellee] exercised actual or constructive possession over the drugs or drug paraphernalia," and, therefore, the court found it to be "appropriate for this evidence to be suppressed." Id.

As its first issue, the Commonwealth asserts that the trial court erred by granting Appellee's suppression motion with respect to the seized marijuana and related paraphernalia. The Commonwealth argues that, once the suppression court determined that the consent obtained to search the Nissan was valid, the court's suppression analysis should have ended. We agree.

> Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals, their homes, their papers, and their effects and possessions from unreasonable searches and seizures. For a search to be lawful, police must first obtain a warrant, supported by probable cause, from a neutral and detached magistrate. A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies.

> One of the limited exceptions to the warrant requirement is a consensual search. [W]e have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so. Although a warrantless, but consensual, search is constitutionally permissible, obtaining consent is an investigative tool utilized by law enforcement. It allows police to do what otherwise would be

impermissible without a warrant. As a consent search is in derogation of the Fourth Amendment, there are carefully demarked limitations as to what constitutes a valid consent search.

First, consent must be voluntarily given during a lawful police interaction. For a finding of voluntariness, the Commonwealth must establish that the consent given by the defendant is the product of an essentially free and unconstrained choice – not the result of duress or coercion, express or implied, or a will overborne – under the totality of the circumstances.

If consent is given voluntarily, the ensuing search must be conducted within the scope of that consent. The standard for measuring the scope of an individual's consent is one of objective reasonableness. We do not ascertain the scope of consent from the individual's subjective belief or the officer's understanding based on his or her training and experience, but based on what … the typical reasonable person would have understood by the exchange between the officer and the suspect.

Commonwealth v. Valdivia, 195 A.3d 855, 861–62 (Pa. 2018) (citations, footnotes, and quotations marks omitted). Moreover, "[i]t is well established that the government may search a vehicle without a warrant or probable cause if the owner of the vehicle voluntarily consents to the search." Commonwealth v. Yedinak, 676 A.2d 1217, 1220 (Pa. Super. 1996).

Here, like the Commonwealth, we ascertain no error in the suppression court's initial legal determination regarding consent. The police obtained written consent from the vehicle's owner to search it. Accordingly, there was no violation of the state or federal constitutions when a search conducted pursuant to that consent ensued. The second aspect of the suppression court's order – the denial of suppression with respect to the discovered

weapon – is not under dispute.  Accordingly, we will not address that aspect of the court's order.[2]

Nevertheless, the suppression court went on to suppress the discovered marijuana and related paraphernalia because there was, ostensibly, "no evidence" of Appellee's constructive possession of those items.  SCO at 4. This was plain error.  Possession, constructive or otherwise, is an element of the criminal offenses at issue; it is not a factor pertinent to suppression analysis in this case.

Indeed, the suppression court did not provide any case law supporting its conclusion in that regard, nor has this Court discovered any jurisprudence supporting the suppression court's reasoning.  The only cases cited by suppression court regarding the issue of constructive possession, Commonwealth v. Valette, 613 A.2d 548 (Pa. 1992), and Commonwealth v. Macolino, 469 A.2d 132 (Pa. 1983), were cases dealing exclusively with sufficiency-of-the-evidence claims, not suppression claims.  Our Supreme Court in Valette, after citing the standard of review for sufficiency claims, and after discussing the Commonwealth's evidence produced at trial, concluded that the evidence was insufficient to demonstrate Valette's constructive possession of narcotics discovered in his co-defendant's apartment.  Indeed,

_____

[2] As discussed, infra, it is of no moment that the court determined that Appellee knew of the presence of the stun gun with regard to the issue of suppression.  Once the court determined that the consent to search given was valid, the weapon was not suppressible.

the Valette Court clearly defined the dispute under consideration in that case as follows:

> The appellant argues that the evidence was not sufficient to establish constructive possession. He contends that he merely was in the wrong place at the wrong time, and that although he knew the co-defendants, he himself was not involved in drug dealing.
>
> In response, the Commonwealth contends that the testimony of lay and expert witnesses, together with the physical evidence, was sufficient to prove constructive possession of the controlled substances, and hence, the evidence was sufficient to sustain the convictions.

Valette, 613 A.2d at 549 (emphasis added). Nowhere in that opinion does the Court cite the standard of review for a suppression claim, nor does it discuss the Fourth Amendment or related search and seizure jurisprudence.

The Macolino Court reached the opposite result regarding constructive possession, but, again, the Court was clearly addressing the sufficiency and not the suppression of evidence. See Macolino, 469 A.2d at 133 ("The sole issue confronting this Court is whether the Superior Court erred in reversing the trial court's judgment of sentence against Carl Macolino. The Superior Court … held that the Commonwealth failed to produce sufficient evidence to establish that appellee was in constructive possession of the controlled substance, since his wife could also have had possession of the drug. We find that the Superior Court did err, and we reverse.") (emphasis added, footnote omitted).

> As our Supreme Court has explained:
>
> Absent a successful motion to suppress, or its equivalent, the Commonwealth like any other party is entitled to attempt to introduce at trial any and all relevant evidence. The point of a

- 8 -

motion to suppress physical evidence is to eliminate certain tangible evidence from the Commonwealth's trial armamentarium, on grounds that the manner of the government's acquisition of that evidence involved a violation of the defendant's constitutional rights. Whether that evidence is to be suppressed does not depend upon whether the Commonwealth has committed itself to introduce the evidence at trial, or how important it is to the Commonwealth's case, or how strong the evidence is, or whether it is subject to trial contradiction, explanation or rebuttal; the focus is upon its manner of acquisition, and how that manner of acquisition implicated the defendant's constitutional rights. By the same token, an unsuccessful motion to suppress does not restrict the defendant from arguing at trial that the evidence should be excluded, or discounted by the factfinder, on grounds unrelated to the constitutionality of its acquisition.

Commonwealth v. Millner, 888 A.2d 680, 693 (Pa. 2005) (emphasis added, some emphasis in original omitted).

Accordingly, we conclude that the trial court clearly erred when it suppressed evidence of the seized marijuana and paraphernalia. Constructive possession or want thereof concerns the sufficiency of the evidence, not the admissibility of the evidence on constitutional grounds. The lower court's inquiry into suppression should have ended once it determined that the consent to search the Nissan was constitutionally valid.

Next, the Commonwealth argues in the alternative that the suppression court erred if it intended to rule that the Commonwealth had failed to present a prima facie case for the crimes of PWID and PDP.

Initially, we note that in the order under review, the court expressly stated that, "upon consideration of [Appellee]'s Motion to Suppress Evidence of drug possession, ... it is hereby ORDERED and DIRECTED that said Motion is GRANTED." Suppression Order, 5/2/2018, at 1 (single page). Likewise,

in the opinion accompanying that order, the suppression court stated: "Finally, we find that there is no evidence that [Appellee] excercised actual or constructive possession over the drugs or drug paraphernalia, therefore, we find [it] appropriate for this evidence to be suppressed." SCO at 4. Despite the fact that the Commonwealth raised the instant claim in its Rule 1925(b) statement, the suppression court did not discuss it at all in its Rule 1925(a) opinion. Thus, there is no indication in the record that the court intended to dismiss the PWID and PDP charges for want of a prima facie case, and the court did not enter any order to that effect.

However, in his omnibus pre-trial motion, Appellee raised, in addition to his motion to suppress, a motion to quash those charges based on his assertion that the "Commonwealth has presented no prima facie evidence that the stun gun and drugs found in the vehicle were in fact owned by [Appellee]...." Appellee's Omnibus Pretrial Motion, 3/1/18, at 8-9 ¶¶ 38-40 (unnumbered pages). Moreover, "the law is well settled that if the record supports the result reached by the suppression court, we may affirm on any ground." Commonwealth v. Cartagena, 63 A.3d 294, 301 (Pa. Super. 2013) (en banc). As such, we will address this issue out of an abundance of caution.

Appellee's motion to quash the criminal information was the equivalent of a pre-trial petition for habeas corpus.

> We review a decision to grant a pre-trial petition for a writ of habeas corpus by examining the evidence and reasonable inferences derived therefrom in a light most favorable to the

Commonwealth. Commonwealth v. James, 863 A.2d 1179, 1182 (Pa. Super. 2004) (en banc). In Commonwealth v. Karetny, … 880 A.2d 505 ([Pa.] 2005), our Supreme Court found that this Court erred in applying an abuse of discretion standard in considering a pre-trial habeas matter to determine whether the Commonwealth had provided prima facie evidence. The Karetny Court opined, "the Commonwealth's prima facie case for a charged crime is a question of law as to which an appellate court's review is plenary." Id. at 513…; see also Commonwealth v. Huggins, … 836 A.2d 862, 865 ([Pa.] 2003) ("The question of the evidentiary sufficiency of the Commonwealth's prima facie case is one of law [.]"). The High Court in Karetny continued, "[i]ndeed, the trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, prima facie burden to make out the elements of a charged crime." Karetny, supra at 513…. Hence, we are not bound by the legal determinations of the trial court. …

A pre-trial habeas corpus motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a prima facie case. [Commonwealth v.] Carroll, [936 A.2d 1148,] 1152 [(Pa. Super. 2007)]. "To demonstrate that a prima facie case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein." Id. To "meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof." Id.

Commonwealth v. Dantzler, 135 A.3d 1109, 1111–12 (Pa. Super. 2016)

(en banc).

Furthermore,

[e]vidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the

verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

As noted above, the suppression court did not directly address the Commonwealth's second issue. However, in conflating the issues of suppression and sufficiency of the evidence, the court did opine on the matter to an extent that provides this Court with a clear understanding of the trial court's reasoning regarding whether there was sufficient evidence that Appellee constructively possessed the seized contraband.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

Commonwealth v. Cruz, 21 A.3d 1247, 1253 (Pa. Super. 2011) (citations omitted).

Here, there is no question that Appellee had the power to control the marijuana and related paraphernalia when the evidence is construed in a 'light most favorable' to the Commonwealth. The suppression court received testimony indicating that Appellee had been in the driver's seat of the Nissan. N.T., 3/15/18, at 7. Appellee had immediate access to any items within his reach while sitting there. Common sense dictates that Appellee's area of control necessarily included the space under his seat, as well as any items in

the center console positioned between the front seats.  These are the locations

where the police discovered the marijuana and related paraphernalia.

Thus, the only remaining question is whether there was sufficient

evidence produced by the Commonwealth to demonstrate that Appellee

intended to exercise control over the contraband.   In this regard, the

suppression court stated:

> Here, there was no evidence provided that proves [Appellee] was aware of the presence of the drugs and paraphernalia located in the vehicle.  This is further complicated by the fact that the vehicle did not belong to [him].  Furthermore, because of the presence of the female passenger in the front seat, we cannot speculate as to who exercised control over the drugs or drug paraphernalia. Therefore, we cannot find that the defendant maintained actual or constructive possession over the drugs or paraphernalia.

TCO at 3.

> The Commonwealth contends, however, that it
>
> presented evidence that [Appellee] occupied the driver's seat of the vehicle.  The Commonwealth also presented evidence that [Appellee] indicated he had knowledge of what was under the seat of the vehicle.  It is a reasonable inference that, as a driver or occupant of the vehicle, [Appellee] who claims knowledge of something secreted under the seat would also have knowledge of items that are located in other areas to which the driver would have access.  These areas include the center console, the area between the driver's seat and the center console and items that are in fact under the driver's seat.  While the facts noted by the suppression court that the vehicle did not belong to [Appellee] and there was another occupant of the vehicle are potential defenses against a finding that they were constructively possessed and/or jointly constructively possessed, they do not support dismissal of the charges at this stage.

Commonwealth's Brief at 13-14.[3]  For the following reasons, we agree with the Commonwealth.  See Widmer, supra.

It is certainly possible that Appellee did not know about the marijuana and related paraphernalia when he operated the Nissan.  As noted by the suppression court, the presence of a passenger in the vehicle, and the fact that Appellee was not the owner of that vehicle, could easily create a reasonable doubt for a factfinder as to whether Appellee had such knowledge.  However, as noted by the Commonwealth, such evidence effectively constitutes the elements of a defense to the claim of constructive possession (and perhaps a strong defense thereto), but these facts do not render the inference that Appellee intended to control the contraband in "contradiction to the physical facts," or "in contravention to human experience and the laws of nature."  Widmer, supra.

It is true that "we may not infer that" an occupant of a vehicle "knew of [an item]'s existence simply from the fact that it was hidden in the automobile."  Commonwealth v. Hamm, 447 A.2d 960, 962 (Pa. Super. 1982).  However, in the instant case, additional evidence was produced to demonstrate that Appellee knew and intended to exercise control of the weapon located between the center console and the driver's seat.  See N.T. at 8 ("Mr. Rose did state to me that [Appellee said] that if you want to take it there, there's something under my seat.").  Would it be unreasonable for a

---

[3] The record establishes that the weapon was located between the driver's seat and the center console, not under the driver's seat.  See N.T. at 20.

juror to conclude that Appellee's demonstrated intent to control the weapon extended to the drugs and drug paraphernalia that were adjacently located? This is a difficult, subjective question. However, precisely because we cannot say with any certainty that such an inference would be unreasonable or reasonable, this is a matter best left to the factfinder at trial. The sufficiency test does not weigh the strength of evidence but, instead, establishes a bare minimum of evidence necessary to place a matter before a jury or judge sitting as factfinder as a matter of law. We then trust the factfinder to sort weak from strong inferences while assessing the presence or absence of a reasonable doubt in the context of the totality of the evidence produced.

Thus, we conclude that the Commonwealth produced the bare minimum of evidence necessary to survive Appellee's motion to quash for want of sufficient evidence of his alleged constructive possession of the seized marijuana and related paraphernalia. We so conclude because the Commonwealth produced marginally more evidence than the mere fact that marijuana and related paraphernalia were secreted within the area of Appellee's potential control; thus, the Commonwealth provided a modicum of evidence in excess of the floor set by the standard we stated in Hamm.

For these reasons, we affirm the lower court's order to the extent it denied Appellee's motion to suppress the seized weapon. We reverse that order to the extent that it granted Appellant's motion to suppress the marijuana and related paraphernalia. Alternatively, we reverse that order to

the extent that the trial court intended to grant Appellant's motion to quash the charges of PWID and PDP for a lack of sufficient evidence.

Order affirmed in part, reversed in part. Case remanded. Jurisdiction relinquished.

President Judge Gantman concurs in the result.

Judge Olson concurs in the result.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/1/2019